UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAVID TYLER HILL,<br><br>              Plaintiff,<br><br>     v.<br><br>SHELL WAMBLE-FISHER; CYNTHIA RICHMOND; SERGEANT WEBB; HEATHER DUNHAM; ARIS DUNCAN; RUSSEL NITCHALS; LIEUTENANT BUTLER; ARVEL SHEDD; JEFF HENRY; KATHLEEN NIECKO; BRENT REINKE; and IDAHO DEPARTMENT OF CORRECTION,<br><br>              Defendants. | Case No. 1:11-cv-00101-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff asks the Court to Reconsider (Dkt. 49) the Court's March 25, 2013, Order granting in part Plaintiff's Motion for Leave to File a Second Amended Complaint and dismissing some of Plaintiff's claims (Dkt. 48). Having reviewed the record, and otherwise being fully informed, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument. D. Idaho Loc. Civ. R. 7.1.

**MEMORANDUM DECISION AND ORDER - 1**

1.      **Standard of Law**

Plaintiff moves for reconsideration under Federal Rule of Civil Procedure 59(e).

(Mot. for Recons., Dkt. 49, at 1.) That rule does not apply, however, because the March

25 Order was not a final order or judgment. *See United States v. Martin*, 226 F.3d 1042,

1048 n.8 (9th Cir. 2000) ("Rule 59(e)[] applies only to motions attacking final, appealable

orders . . . ."). Therefore, the Court construes the motion as a motion for reconsideration

under the Court's "inherent procedural power to reconsider, rescind, or modify an

interlocutory order for cause seen by it to be sufficient." *City of L.A., Harbor Division v.*

*Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (internal quotation mark and

emphasis omitted). Although courts have authority to reconsider prior orders, they

"should be loathe to do so in the absence of extraordinary circumstances such as where

the initial decision was 'clearly erroneous and would work a manifest injustice.'"

*Christianson v. Colt Indus. Operating Corp.* 486 U.S. 800, 817 (1988) (quoting *Arizona*

*v. California*, 460 U.S. 605, 618 n. 8 (1983)).

2.      **Discussion**

For the reasons that follow, Plaintiff has failed to meet the high standard that

would warrant the Court's reconsideration of its March 25 Order. The Motion will be

denied.

In general, Plaintiff's Motion is no more than a disagreement with the Court's

legal analysis as set forth in the March 25 Order. He has not offered any new factual

allegations, pointed to any newly-issued case law that would affect the Court's analysis,

**MEMORANDUM DECISION AND ORDER - 2**

or explained how the Court's March 25 Order was clearly erroneous or results in manifest injustice. The Court addresses some of Plaintiff's more specific objections below.

### A.    Retaliation Claim

Plaintiff claims he was issued a Disciplinary Offense Report (DOR), for disrespecting staff, in retaliation for using the prison grievance system. "A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). Although use of the grievance system is generally protected conduct for purposes of a retaliation claim, Plaintiff fails to recognize that the grievance he submitted contained a threat, referring to assaulting and abducting a female staff member by hitting her with a club and dragging her back to his cell. (Second Am. Compl., Dkt. 38, ¶45; Initial Review Order, Dkt. 7, at 8.) Protecting prison staff against threats by prisoners is unquestionably a legitimate penological interest, and issuing a DOR to discourage such behavior is reasonably related to that interest.

Plaintiff also claims that the Idaho Department of Correction has a policy that "expressly forbids any reprisal from staff in response to an inmate's concern form/grievance form even if it contains vulgar, disrespectful, or intimidating language." (Mot. for Recons. at 2.) This policy provides no basis for Plaintiffs' claims, however, because a violation of a state law or regulation is insufficient to support a civil rights

**MEMORANDUM DECISION AND ORDER - 3**

claim under § 1983. *See Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994) (holding

that as long as minimum constitutional requirements are met, a prison need not comply

with its "own, more generous procedures"), *abrogated on other grounds by Sandin v.*

*Conner*, 515 U.S. 472 (1995); *Huron Valley Hosp. v. City of Pontiac*, 887 F.2d 710, 714

(6th Cir. 1989) ("[Section 1983] is thus limited to deprivations of *federal* statutory and

constitutional rights. It does not cover official conduct that allegedly violates *state* law.")

(citing *Baker v. McCollan*, 443 U.S. 137, 146 (1979)).

The Court is not persuaded that it should reconsider its dismissal of Plaintiff's

retaliation claim.

**B.      Eighth Amendment Claims**

The Eighth Amendment to the United States Constitution protects prisoners

against cruel and unusual punishment. To state a claim under the Eighth Amendment,

Plaintiff must show that he is "incarcerated under conditions posing a substantial risk of

serious harm," or that he has been deprived of "the minimal civilized measure of life's

necessities" as a result of Defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834

(1994) (internal quotation marks omitted). He must also show that Defendants were

deliberately indifferent to his needs. *Id.* at 835. To exhibit deliberate indifference, a prison

official "must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

**MEMORANDUM DECISION AND ORDER - 4**

### 1.    Restrictive Conditions of Confinement Claim

Plaintiff argues that the restrictive conditions of C-3 tier in the Mental Health Unit

(MHU) violate the Eighth Amendment. However, he has failed to cast any doubt on the

Court's conclusion in the Initial Review Order that

> Plaintiff, who was suicidal, required a sufficiently serious
> response to protect himself and possibly others from harm. In
> such circumstances, the short term deprivation of certain basic
> necessities of life is justified. *See Anderson v. County of Kern*,
> 45 F.3d 1310, 1315 (9th Cir. 1995) (in an emergency, prison
> officials are not culpable when they put an inmate who
> imminently threatens or attempts suicide temporarily in a
> place where he cannot hurt himself). Moreover, Plaintiff
> cannot show that such action was taken with deliberate
> indifference to his health and safety.

Initial Review Order, Dkt. 7, at 16. Again, Plaintiff's Motion reveals that he simply

disagrees with the Court's analysis and conclusion that the emergency of Plaintiff's

attempted suicide justified the short-term restrictive conditions under which Plaintiff was

held. Accordingly, there is no reason to reconsider the prior decision.

### 2.    Failure to Protect Against Self-Harm

Plaintiff also argues that Defendants unlawfully placed him in a housing unit

where he could harm himself. However, the allegations of the Second Amended

Complaint do not raise a plausible inference that any Defendant was deliberately

indifferent to a substantial risk that Plaintiff would seriously harm himself. Plaintiff

claims that he put Defendant Webb on notice "of the possibility of death." (Mot. for

Recons. at 6.) The concern form that Plaintiff submitted to Webb states, "This is a serious

**MEMORANDUM DECISION AND ORDER - 5**

concern and has a profound impact on my mental state. Until this burden is lifted I will

refuse all medications and meals. Mrs. Fisher wishes for my death and she may get [it]."

(Second Am. Compl. ¶¶53-54; Ex. E to initial Complaint, Dkt. 3-1.) These vague

statements are insufficient to establish that Defendants deliberately disregarded a

substantial risk that Plaintiff would try to kill himself.

### 3.    Medical and Mental Health Treatment Claims

The protections of the Eighth Amendment include a prisoner's right to minimally

adequate medical care. In the medical context, a conclusion that a defendant acted with

deliberate indifference requires that the plaintiff show both "(a) a purposeful act or failure

to respond to a prisoner's pain or possible medical need and (b) harm caused by the

indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Because society does not expect that prisoners will have unqualified access to

health care, deliberate indifference to medical needs amounts to an Eighth Amendment

violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

For example, "[a] prisoner who nicks himself shaving obviously does not have a

constitutional right to cosmetic surgery. But if prison officials deliberately ignore the fact

that a prisoner has a five-inch gash on his cheek that is becoming infected, the failure to

provide appropriate treatment might well violate the Eighth Amendment." *Chance v.

Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Plaintiff claims he did not receive adequate medical or mental health care. First,

Plaintiff contends he should be able to proceed on his claim that Defendant Duncan failed

**MEMORANDUM DECISION AND ORDER - 6**

to treat the cuts on his arm. Plaintiff alleges only that the cuts have left scars. He does not allege any physical injury from the alleged failure to treat the cuts.

Plaintiff does contend that he suffered "great anxiety, fear, and emotional injury due to the constant fear of having the wounds become infected." (Second Am. Compl. ¶249.) Pursuant to 42 U.S.C. § 1997e(e), however, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Although Plaintiff complains about his fear of infection, he does not claim that the wounds actually became infected, nor has he alleged that the scars have caused him any injury other than a cosmetic one, and his resulting anxiety is not actionable.

Plaintiff next claims that he did not receive adequate mental health treatment. He has already been allowed to proceed on this claim against Defendants Dunham and Duncan. As Plaintiff's primary caretakers, Dunham and Duncan might have been aware of the alleged inadequacy of Plaintiff's mental health treatment. Plaintiff has not, however, established that any other Defendant was deliberately indifferent with respect to Plaintiff's mental health treatment.

For example, Plaintiff states that he wrote to Defendant Reinke, the Director of the IDOC, complaining about constitutional violations. However, the letter he attached to his initial Complaint refers only to (1) an alleged denial of his right of access to the courts, (2) alleged due process violations, and (3) conditions of confinement. (*See* Ex. Q to Complaint, Dkt. 3-2 at 15-17.) It does not complain of inadequate mental health

**MEMORANDUM DECISION AND ORDER - 7**

treatment. With respect to Defendant Niecko, Plaintiff alleges only that she is "primarily responsible for overseeing the delivery of medical services." (Second Am. Compl. at ¶¶260, 263.) These allegations are insufficiently specific—even "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. Vague and conclusory allegations of official participation in civil rights violations are not sufficient . . . ." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff has not shown that the March 25 Order was clearly erroneous or will result in manifest injustice with respect to his mental health treatment claims.

### C.   Due Process Claims

Plaintiff argues that he was transferred to the MHU and involuntarily subjected to a behavioral modification program without a hearing. To state a viable due process claim, Plaintiff must show that he has a liberty interest in avoiding the MHU, which means that the housing and treatment change amounts to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

The Court reiterates what it said in its Initial Review Order in this case:

> If Plaintiff was transferred to the MHU indefinitely, then he might have a colorable claim.  The deprivations resulting from the lowest levels of the behavioral modification program could . . . trigger a liberty interest as they constitute an atypical and significant hardship in comparison to the normal incidents of prison life.  Nonetheless, the short-term transfer of a suicidal inmate, such as Plaintiff, does not implicate these same liberty interests.  *See Gonzales v. Carpenter*, 9:08-CV-629 (LEK/ATB), 2011 WL 768990

**MEMORANDUM DECISION AND ORDER - 8**

(N.D. N.Y. January 3, 2011) (holding thirty-day confinement in psychiatric unit does not implicate liberty interest).  *See also Jefferson v. Helling*, 324 Fed. Appx. 612, 613 (9th Cir. 2009) (plaintiff's emergency transfer to, and short-term detention in a prison's mental health unit did not entitle inmate to a prior hearing); *Gay v. Turner*, 994 F.2d 425, 427 (8th Cir. 1993) (five temporary transfers to the mental health unit for evaluation did not implicate Due Process Clause).

Plaintiff was transferred to the mental health unit so the prison could address an emergency mental health situation, and it does not appear that Plaintiff was confined in the MHU for more than 30 days.  In light of the serious mental health problems Plaintiff was experiencing at the time he was placed in the MHU, this period of time does not trigger due process protections.

In short, though the deprivations involved in the lower levels of the behavioral modification program in use at the MHU may impose an "atypical and significant hardship" upon prisoners, thus triggering due process protections, it is not clear that Plaintiff experienced such deprivations or was even confined in the MHU for a period of more than 30 days.  Accordingly, he fails to state a due process claim.

(Initial Review Order at 14-15.) Plaintiff has not shown sufficient cause for the Court to reconsider this analysis.

D.    **Remaining Claims**

Plaintiff's arguments with respect to the remaining dismissed claims similarly do not warrant reconsideration, and do not justify a more detailed discussion here.

**MEMORANDUM DECISION AND ORDER - 9**

## ORDER

**IT IS ORDERED** that Plaintiff's Motion for Reconsideration (Dkt. 49) is

DENIED.

DATED:  **June 24, 2013**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 10**